**JAMES M. CHAVEZ**
California State Bar No. 255766
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467

Attorneys for the Person Charges as Mr. Barragan-Vasquez

> **FILED**
>
> JUL - 3 2008
>
> CLERK, U.S. DISTRICT COURT
> SOUTHERN DISTRICT OF CALIFORNIA
> BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARBARA L. MAJOR)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CRIMINAL NO. 08MJ2010 |
| Plaintiff, | ) |
| | ) **NOTICE TO PROCEED AS THE** |
| v. | ) **"PERSON CHARGED AS" AND REQUEST** |
| | ) **FOR PROVISIONAL APPOINTMENT** |
| | ) **OF COUNSEL BASED ON PROFFER.** |
| Barragan-Vasquez, | ) |
| Defendant. | ) |

The defendant, the person charged as Barragan-Vasquez, by and through his counsel, James Chavez and Federal Defenders of San Diego, Inc., requests appointment of counsel, that he be permitted to submit his financial information by way of proffer, and is unwilling to admit his identity at this time.

### STATEMENT OF FACTS

According to the complaint filed against this individual, he is being charged with Misuse of Passport under 18 U.S.C. § 1544. Identity is an essential element of this offense.

The complaint provides: "On or about June 30, 2008, within the Southern District of California, Defendant Agustin Jaime BARRAGAN-VAZQUEZ did knowingly and willfully use a U.S. Passport issued or designed for the use *of another*, with the intent to gain admission into the United States" (emphasis added).

18 U.S.C. § 1544 provides: "Whoever willfully and knowingly uses, or attempts to use, any passport issued or designed for the use *of another* . . . Shall be . . . imprisoned not more than . . .10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime)" (emphasis added).

1    The financial affidavit form used in this district, CJA 23, requires defendants to provide their

2  signature to certify under penalty of perjury that the information on the form is "true and correct." Thus, this

3  form requires an individual to admit their identity under penalty of perjury.

4    According to the "Probable Cause Statement & Statement of Facts," this individual invoked his

5  Miranda rights. He continues to assert his 5th and now 6th Amendment rights and does not waive them at

6  this time.

## MEMORANDUM OF LAW

8    Because our Constitution guarantees the right to counsel, U.S. Const., Amend. VI, ("[I]n all criminal

9  prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense"),  to

10  all criminal defendants, and since this has been interpreted to include those who cannot afford it,  Gideon

11  v. Wainwright, 372 U.S. 335 (1963), a mechanism has been put into place to ensure compliance with the

12  Sixth Amendment.[1]

13    Federal Rule of Criminal Procedure 44(a) mandates that "A defendant who is unable to obtain

14  counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from

15  initial appearance through appeal, unless the defendant waives his right."   In order to implement that

16  constitutional mandate, Congress promulgated the Criminal Justice Act of 1964, which provides that each

17  United States District Court must adopt a plan for furnishing representation "for

18  any person financially unable to obtain adequate representation." 18 U.S.C. § 3006A(a).[2] The CJA requires

---

[1] Just this last term, the Supreme Court affirmed an individual's right to counsel attaches at his first appearance. *Rothgery v. Gillespie*, (No. 07-440) (holding that "the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty.")

[2] It is noteworthy that Rule 44(a) provides for appointment of counsel to defendants who are simply "unable" to obtain counsel, whereas the CJA mandates counsel for those "financially unable" to do so.  The Supreme Court's broader wording of Rule 44(a) is intentional.  The 1966 Amendments to the Rule added the substance of Rule 44(a) as stated above.  In enacting those Amendments, the Advisory Committee noted plainly that "the right [to counsel] extends to defendants unable to obtain counsel for other than financial reasons."  The Advisory Committee noted, further, that "[i]f a defendant is able to compensate counsel but still cannot obtain counsel, he is entitled to the assignment of counsel even though not free counsel." Fed. R. Crim P. 44(a), Advisory Committee's Note.  See also Brewer v. Williams, 430 U.S. 387, 404 (1977) ("the right to counsel does not depend upon a request by the defendant," citing cases); United States v.

1  that the defendant be "financially unable" to afford a lawyer. 18 U.S.C. § 3006A(a). The statute provides

2  that "the United States magistrate or the court, <u>if satisfied after appropriate inquiry that the person is</u>

3  <u>financially unable to obtain counsel</u>, shall appoint counsel to represent him," barring a waiver of the Sixth

4  Amendment right to counsel by the client. 18 U.S.C. § 3006A(b) (emphasis added).  The district court must

5  conduct the inquiry regarding the necessity for appointed counsel, and a defendant need not request the

6  statutorily required inquiry in order to trigger the district court's required actions.  <u>See</u> <u>United States v.</u>

7  <u>Wadsworth</u>, 830 F.2d 1500, 1503, 1505 (9th Cir. 1987).

8          In our district, as a matter of practice as opposed to legal requirement, criminal defendants fill out

9  the which is then routinely placed into the defendant's court file.  Nowhere in the CJA or in the case law is

10  there a rule necessitating that the "appropriate inquiry" can only be satisfied via the CJA Form 23. Indeed,

11  mandating a financial affidavit as the *sole* means for a defendant to obtain appointed counsel has been held

12  unconstitutional by both the Fifth and Tenth Circuits. <u>United States v. Sarsoun</u>, 834 F.2d 1358, 1363 (7th

13  Cir. 1988) ("courts should not require defendants to submit CJA Form 23 or some similar form as the only

14  way to secure appointed counsel"); <u>United States v. Moore</u>, 671 F.2d 139, 141 (5th Cir. 1982) (court's

15  absolute requirement that defendant submit CJA Form 23 in order to receive appointed counsel is *per se*

16  reversible error, observing that "CJA Form 23 is not a required statutory form.  It is an administrative tool

17  used to assist the court in appointing counsel.").  Similarly, there is no requirement that such an affidavit be

18  filed anywhere or otherwise placed in the public purview.  Indeed, there is a compelling argument, in light

19  of constitutional and privacy interests, that such public display of this information should not occur.  This

20  is not in keeping with the purposes underlying the CJA requirement that the appropriate inquiry be

21  undertaken.  In addition, there have been several instances where probation officers in this district use the

22  form to recommend that defendants pay monies or receive upward sentencing enhancement due to

23  information contained in these affidavits.

24          If this form is compelled by the Court in order to obtain the constitutionally-guaranteed right to

25

26  _____

     <u>Turnbull</u>, 888 F.2d 636, 638 (9th Cir. 1989) ("If a defendant . . . does not retain acceptable

27  counsel, the court must appoint counsel.").

28

1  counsel, both the Fifth and Sixth Amendments are implicated. It is not constitutionally permissible to use

2  financial affidavits to compel our clients to choose between vindicating their Sixth Amendment right to

3  appointed counsel and their Fifth Amendment privilege against self-incrimination. See Simmons v. United

4  States, 390 U.S. 377 (1968). The information elicited by the affidavit need not be directly incriminating,

5  or directly lead to the institution of criminal charges, to raise concerns under the Fifth Amendment. See

6  Ohio v. Reiner, 121 S. Ct. 1252, 1253-54 (2001) (Fifth Amendment privilege against self-incrimination

7  extends to individuals who deny culpability for criminal conduct, as well as to persons implicated in criminal

8  activity -- "one of the Fifth Amendment's 'basic functions . . . is to protect innocent men . . .'who otherwise

9  might be ensnared by ambiguous circumstances") (quotation omitted); United States v. Hubbell, 530 U.S.

10  27, 37, (2000)(Fifth Amendment privilege "encompasses compelled statements that lead to the discovery

11  of incriminating evidence even though the statements themselves are not incriminating and are not

12  introduced into evidence") (emphasis added); see also id. at 35-37 ("the act of producing documents in

13  response to subpoena may have a compelled testimonial aspect" if the act of production relates implied

14  assertions of fact regarding the "existence, custody, and authenticity of documents" in a person's "possession

15  or control").

16       In our Circuit, the level of protection afforded to information provided to obtain counsel is an open

17  question. See, e.g. United States v. Hickey, 185 F.3d 1064 (9th Cir. 1999) (not deciding question due to lack

18  of jurisdiction); United States v. Hitchcock, 992 F. 2d 236, 239 (1993) ("The Ninth Circuit has not decided

19  the amount of protection such financial disclosures must receive. Other circuits agree that some sort of

20  protection is necessary . . . ."); Seattle Times Company v. United States District Court, 845 F.2d 1513 (9th

21  Cir. 1988) (holding that defendant only had "real and appreciable" Fifth Amendment concerns but noted that

22  "the time for [Fifth Amendment] protection will come when, if ever, the government attempts to use the

23  information against the defendant at trial . . . or if the government attempts to use any information derived

24  from the facts revealed in the affidavits"); see also id. at 1520, (Reinhardt, J. concurring), ("it is appropriate

25  for a defendant to raise a Fifth Amendment objection at the time he is required to submit the financial

26  information necessary to obtain court-appointed counsel"); United States v. Ellsworth, 547 F.2d 1096, 1098

27  (9th Cir. 1976) (tax protestor defendant refused to sign the financial affidavit, citing Fifth Amendment

28

concerns even when told that information disclosed on the form would be reviewed by the court <u>in camera,</u> then filed under seal and could not be used by the government for further tax prosecution; however, decision held that he was not prejudiced by his pro se defense).

Other circuits have squarely addressed this issue. The Third, Fourth, Eighth, and Tenth Circuits all found that Fifth Amendment concerns warrant <u>in camera</u> review by the court and the filing of the affidavits under seal. <u>See United States v. Pavelko</u>, 992 F.2d 32, 34 (3d Cir. 1993) (finding error, in dicta, in the district court's admission of financial affidavit and related testimony because the district court impermissibly "conditioned the free exercise of one constitutional right upon waiver of the other"); <u>United States v. Davis,</u> 958 F.2d 47, 49 n.4 (4th Cir. 1992) (tax protestor charged with willful failure to file tax returns); <u>United States v. Hardwell,</u> 80 F.3d 1471, 1483-1484 (10th Cir. 1996) (holding that use of statements in financial affidavit to prove Hardwell's culpability for money laundering constituted plain error and raised a non-speculative "conflict between Fifth and Sixth Amendment rights"); <u>see also United States v. Gravatt,</u> 868 F.2d 585, 589 (3d Cir. 1989) (rejecting an "unconditional requirement" that a defendant complete a financial affidavit before appointment of counsel when "a defendant asserts a colorable claim that disclosure to the government of a completed CJA 23 would be self-incriminating"); <u>United States v. Anderson,</u> 567 F.2d 839, 840-41 (8th Cir. 1977) (ordering data in the financial affidavit sealed and precluded from use in a tax prosecution because "[t]o hold otherwise would [impermissibly] force Anderson to choose between his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination") (other internal citations omitted).

In light of these authorities, undersigned presents by way of proffer the following:

1. This individual, at the time of his arrest has been unemployed for three months.

2. This individual's primary source of income during the past few years has been intermittent work as a painter.

3. As a painter, he received an average of about $450 per week.

4. He owns no real property, cars, stocks, bonds or annuities.

5. He is the father of three children.

6. He owns no property worth more than $5000.

1    This individual can not afford his own lawyer and requests that this Court appoint him one, if only

2  provisionally at this time. Should this Court require more information, this individual would like to have

3  the opportunity to review the evidence against him and confer with an attorney as a to the best way to

4  proceed.

5

6                                              Respectfully submitted,

7

8  Dated: July 2, 2008                         **JAMES M. CHAVEZ**
                                               Federal Defenders of San Diego, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28